UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY AMIGON,

                  Plaintiff,

          -against-

DYLAN J. LUZON, et al.,

                  Defendants.

**OPINION AND ORDER**

21-CV-02029 (PMH)

PHILIP M. HALPERN, United States District Judge:

Anthony Amigon ("Plaintiff"), proceeding *pro se*, brings this action against the Village of Dobbs Ferry (the "Village"), Officer Dylan Luzon ("Luzon"), and Officer Michael Digilio ("Digilio," with Luzon, the "Officer Defendants," and collectively, "Defendants"). (Doc. 23, "Am. Compl."). Plaintiff asserts three claims for relief under 42 U.S.C. § 1983 ("§ 1983") for malicious prosecution, unreasonable search, a claim of municipal liability against the Village under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) ("*Monell*"), as well as three state law claims for relief of trespass, intentional infliction of emotional distress, and negligence. (*See generally*, Am. Compl.).

Defendants, in accordance with a briefing schedule set by the Court, filed their motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)[1] on March 30, 2022. (Doc. 49; Doc. 50, "Def. Br."; Doc. 51). Plaintiff's opposition was filed on April 29, 2022. (Doc. 52, "Opp. Br.").

---

[1] Defendants' notice of motion references a dismissal based separately upon Fed. R. Civ. P. 12(b)(1) – a lack of subject matter jurisdiction. However, Defendants make no argument in support thereof. Accordingly, that branch of Defendants' motion is denied as abandoned. *See, e.g. Van Orden v. City of Port Jervis*, No. 20-CV-07207, 2022 WL 1667024, at *1 (S.D.N.Y. May 25, 2022) (deeming Rule 12(b)(1) argument waived when not referenced in moving briefs even though cited in the notice of motion).

The motion was fully submitted upon the filing of Defendants' reply brief on May 12, 2022 (Doc. 56, "Reply").

For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

## BACKGROUND

Plaintiff's claims arise from his arrest, effectuated by the Officer Defendants on March 7, 2020. (*See generally* Am. Compl.). The following facts are taken from the Amended Complaint as well as a document attached to the original Complaint.[2]

Luzon stopped Plaintiff's vehicle in the evening of March 7, 2020 and told Plaintiff that he had blown through a stop sign and had been speeding. (Am. Compl. at 8).[3] Luzon asked Plaintiff for his license. (*Id.*). Plaintiff did not have it on him but recited his driver's license number from memory. (*Id.*). Luzon ran the driver's license number from his patrol vehicle and informed Plaintiff that his license was suspended. (*Id.*). Luzon then directed Plaintiff to get out of the car, patted him down for a weapon, and handcuffed him. (*Id.*). Plaintiff objected and requested a supervisor. (*Id.*). Digilio, who was at the scene at the time, identified himself to Plaintiff as a supervisor. (*Id.*). Luzon then put on latex gloves and searched Plaintiff's car without Plaintiff's consent. (*Id.* at *9). Plaintiff was then placed in the back of the police car, arrested, and given two tickets. (*Id.*). Plaintiff ultimately entered a guilty plea in satisfaction of the two charges incident to the traffic stop:

---

[2] "[T]he Court is entitled to consider facts alleged in the complaint *and documents attached to it* or incorporated in it by reference, [as well as] documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken . . . ." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014) (emphasis added); *Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) (explaining that a court may consider "statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which the plaintiff relied in bringing the suit"). Although the original Complaint has been superseded by the Amended Complaint, the earlier pleading may be properly considered by the Court on a motion to dismiss when evaluating the plausibility of Plaintiff's claims, especially where, as here, they shed light on the claims Plaintiff attempts to raise in his Amended Complaint. *See, e.g., Perry v. Mary Ann Liebert, Inc.*, No. 17-CV-05600, 2018 WL 2561029, at *4 (S.D.N.Y. June 4, 2018), *aff'd*, 765 F. App'x 470 (2d Cir. 2019).

[3] Pagination cited herein corresponds to that generated by ECF.

Unlicensed Driver and Stop Sign Violation, which guilty plea was accepted by the Dobbs Ferry

Village Court on January 4, 2021. (Doc. 1 at 10).

This litigation followed.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim

upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is

not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must

be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and

then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences

are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53

(2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and

'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556

U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and

conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)).

However, while "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

Plaintiff brings his first three claims for relief under § 1983, which provides in pertinent part that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected,

any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "This language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). Thus, to state a claim under § 1983, Plaintiff must demonstrate "(1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under color of state law, or a state actor." *Id.*; *see also Town & Country Adult Living, Inc. v. Vill./Town of Mount Kisco*, No. 17-CV-08586, 2019 WL 1368560, at *17 (S.D.N.Y. Mar. 26, 2019). The "first step in any [§ 1983] claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Defendants seek to dismiss each of Plaintiff's § 1983 claims for relief and the Court will consider them *seriatim*.[4]

I.      First Claim for Relief: Malicious Prosecution

In order to establish a § 1983 claim for malicious prosecution, "a plaintiff must . . . establish the elements of a malicious prosecution claim under state law." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010)). Accordingly, under New York law, Plaintiff must allege: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in

---

[4] Defendants argue in reply that "[t]o the extent Plaintiff seeks to raise a new retaliation claim in his opposition brief" it should not be permitted because "a plaintiff may not seek to amend his complaint to include entirely new claims in papers opposing a motion to dismiss." (Reply at 7 (citing *McIntosh v. United States*, No. 14-CV-07889, 2016 WL 1274585, at *17 (S.D.N.Y. Mar. 31, 2016)). The Court agrees and, moreover, does not read Plaintiff's single reference to the word "retaliation" to state a new claim for relief. Such a claim would, nevertheless, fail under *Heck* for the reasons explained herein because such a retaliation claim would necessarily imply the invalidity of Plaintiff's conviction. *See Santana v. Denton*, No. 20-CV-04352, 2020 WL 4505733, at *4 (S.D.N.Y. July 30, 2020) (holding plaintiff's retaliation claim barred by *Heck* and noting that "if [p]laintiff were to prevail in this action by establishing that Defendants prosecuted him in retaliation . . . the validity of his conviction would be called into question.").

plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* (internal quotation marks omitted). When pressing a malicious prosecution claim under § 1983, the plaintiff must show also "that there was (5) a sufficient post-arraignment liberty restraint to implicate his Fourth Amendment rights." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000).

The Supreme Court, in *Thompson v. Clark*, recently "h[e]ld that a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence." 142 S. Ct. 1332, 1341 (2022). Rather, under *Thompson*, a Plaintiff must plead that "the criminal prosecution ended without a conviction," a result that Plaintiff cannot plead. *Id.* "[A] guilty plea is not a termination in favor of the accused for purposes of a malicious prosecution claim." *Blackwood v. Omorvan*, No. 16-CV-00644, 2019 WL 4600662, at *7 (S.D.N.Y. Sept. 23, 2019) (citing *Posr v. Court Officer Shield #207*, 180 F.3d 409, 418 (2d Cir. 1999)). A prosecution ends in a conviction for these purposes where a plaintiff has pled guilty to one charge in satisfaction of all against him, even where the guilty plea encompasses only a lesser included charge. *See Rothstein v. Carriere*, 373 F.3d 275, 287-89 (2d Cir. 2004); *Campos v. City of New York*, 2010 WL 3912493, at *4 (S.D.N.Y. Sept. 13, 2010). The Supreme Court's decision in *Thompson* did not alter this outcome. *See Al -Anesi v. City of New York*, No. 18-CV-08439, 2022 WL 1948879, at *6 (S.D.N.Y. June 6, 2022) (considering *Thompson* and finding a guilty plea to a lesser charge still negates the favorable termination element of a malicious prosecution claim); *see also Grainger v. Buckhannon*, No. 22-CV-00354, 2022 WL 2168079, at *3 (D.S.C. June 15, 2022) (same and noting that "*Thompson* did not directly address proceedings involving multiple charges where some resulted in the plaintiff's conviction and others were dismissed. The court is not persuaded that the application of *Thompson*

to such cases permits a § 1983 claim for malicious prosecution where the charges are related and arise from the same course of conduct conceded by the plaintiff's guilty plea.").

The disposition of the charges against Plaintiff, as set forth in the January 14, 2021 document from the Dobbs Ferry Village Court annexed to the original Complaint, was "Fine/Fee" with respect to the unlicensed driving charge; and, with respect to the stop sign violation, the disposition was "Dis/Satisfaction." (Doc. 1 at 10). The document also indicates that "[t]his Court has accepted your guilty plea for the *charges* listed above." (*Id.* (emphasis added)). Moreover, Plaintiff admits in his opposition to this motion that he "took a plea deal" with respect to these charges. (Opp. Br. at 6).

Under these circumstances, Plaintiff is unable to plead that the criminal prosecution ended without a conviction. His guilty plea defeats the second element of any malicious prosecution claim.[5]

Plaintiff's malicious prosecution claim is also barred by operation of the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994). There, the Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed [or otherwise invalidated].

---

[5] Defendants also argue that Plaintiff's malicious prosecution claim fails because he did not face a sufficient post-arraignment liberty restraint as required under § 1983. (Def. Br. at 6 (citing *Burg v. Gosselin*, 591 F.3d 95 (2d Cir. 2010)). The Second Circuit held in *Burg* "that the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." *Id.* at 98. The Circuit went on to clarify that "[t]he number of appearances may bear upon whether there was a seizure" and that, specifically, restrictions on the right to travel may suffice to establish a seizure. *Id.* at 98-99. Although it is clear here that Plaintiff was issued a non-felony summons, it is unclear at this stage how many court appearances he was required to appear for and what, if any, further restrictions he may have faced.

7

*Id.* at 486-87. A successful malicious prosecution claim here would "necessarily imply the invalidity of [Plaintiff's] conviction or sentence." *Id.* The claim, therefore, must fail.

Plaintiff's first claim for relief is, accordingly, dismissed.

II.     Second Claim for Relief: Unreasonable Search

Plaintiff next argues that Defendants "unlawfully enter[ed] and search[ed] his vehicle." (Am. Compl. at 9).[6] The Fourth Amendment provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. This language, "incorporated against the states by the Fourteenth Amendment, guarantees all individuals the right to be free from unreasonable search and seizure." *Corley v. Vance*, 365 F. Supp. 3d 407, 443 (S.D.N.Y. 2019), *aff'd sub nom. Corley v. Wittner*, 811 F. App'x 62 (2d Cir. 2020). "Consequently, as to warrantless searches, it has been the law for more than a half century that: 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Jenkins v. Cty. of Nassau*, No. 19-CV-00557, 2021 WL 1997182, at *6 (E.D.N.Y. May 18, 2021) (quoting *United States v. Weaver*, 975 F.3d 94, 99 (2d Cir. 2020)). "A 'search' occurs for purposes of the Fourth Amendment if the police seek information by intruding on a person's reasonable expectation of privacy or by means of trespassing upon one's person, house, papers, or effects." *United States v. Smith*, 967 F.3d 198, 205 (2d Cir. 2020).

Defendants first argue that Plaintiff's unreasonable search claim is, like his malicious prosecution claim, barred by *Heck*. (Def. Br. at 7). However, the *Heck* Doctrine applies "only when

---

[6] Defendants' argument that Plaintiff cannot base an unreasonable search claim on his initial traffic stop is unnecessary, as Plaintiff is clear that he presses that claim in connection with the search of his vehicle, not the initial stop. (Am. Compl. at 9; Opp. Br. at 7).

'establishing the basis for [a § 1983] claim *necessarily demonstrates* the invalidity of the conviction.'" *McKithen v. Brown*, 481 F.3d 89, 101 (2d Cir. 2007) (quoting *Heck*, 512 U.S. at 481-82 (alteration and emphasis in original)). When considering the applicability of *Heck* to an unreasonable search claim where there is "a single episode involving a single search," the conviction rendered invalid must be "based on that search." *Monroe v. Gould*, 372 F. Supp. 3d 197, 202-03 (S.D.N.Y. 2019) (internal quotation marks omitted). Moreover, "a federal court's finding of a Fourth Amendment violation would not necessarily imply that a prior state conviction was unlawful if, despite the constitutional violation, the subject evidence was admissible based on such doctrines as independent source, inevitable discovery, and harmless error." *Williams v. Ontario Cty. Sheriff's Dep't*, 662 F. Supp. 2d 321, 329 (W.D.N.Y. 2009). Plaintiff's conviction here was based on his failure to stop at a stop sign and driving without a valid license. The later search of his car produced no evidence leading to his conviction. Therefore, a finding that the search was unreasonable would not render his conviction invalid. *Heck* is, therefore, inapplicable to this claim.

Defendants next argue that their search of Plaintiff's car was reasonable because "the Officers had a duty to ensure that Plaintiff's vehicle was removed from public streets, which necessarily required impoundment and an inventory search" and that such an inventory search may be conducted without a warrant. (Def. Br. at 9 (citing *United States v. Williams*, 930 F.3d 44, 53 (2d Cir. 2019) ("[w]hen law enforcement officials take a vehicle into custody, they may search the vehicle and make an inventory of its contents without need for a search warrant and without probable cause.")))

This argument fails because, as Defendants admit, Plaintiff's "father was able to arrive to the scene and take care of the vehicle." (Def. Br. at 9).[7] Whether Defendants were entitled to impound Plaintiff's car, allowing them to conduct an *inventory search* is of no moment here because they never did impound the car and the search of the vehicle that occurred was not an inventory search.[8] *See United States v. Lopez*, 547 F.3d 364, 372 (2d Cir. 2008) (stating that an inventory search necessarily occurs *after* a vehicle has been taken into custody and noting that "[t]he Fourth Amendment does not permit police officers to disguise warrantless, investigative searches as inventory searches.").

Plaintiff's unreasonable search claim nevertheless fails because he does not allege any injury as a result of the search. "In order to recover compensatory damages [based on an allegedly unreasonable search], the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, which, we hold today, does not encompass the 'injury' of being convicted and imprisoned." *Marshall v. City of New York*, No. 10-CV-03137, 2010 WL 4739810, at *2 (S.D.N.Y. Nov. 17, 2010) (internal quotation removed). Plaintiff does not allege that the search resulted in the Officer Defendants finding anything and, as discussed *supra*, his conviction did not rely in any way on the search. To the extent Plaintiff seeks "$500,000 in compensatory damage[s]" for "[e]motional distress, pain and anguish, loss of enjoyment of life and lost future earnings," he does not allege any connection between the search of his vehicle and those claimed injuries. To the extent that Plaintiff seeks the remedy of "suppression" in connection

---

[7] To the extent Defendants argue that Plaintiff's argument with respect to the reasonableness of the vehicle search is based on allegations outside of the Amended Complaint, the Court need only know that the car was never impounded in order to support its conclusion that no inventory search could have been taken. This point, however, Defendants concede.

[8] The *Lyle* rule relied on by Defendants, which states that unauthorized drivers of rental cars do not have constitutional standing to challenge a search, is also inapplicable here because Plaintiff was not driving a rental car. *See United States v. Lyle*, 919 F.3d 716, 728 (2d Cir. 2019).

with his unreasonable search claim, (Am. Compl. at 7), that remedy is simply inapplicable in a §

1983 suit. *See Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999) ("The fruit of the

poisonous tree doctrine . . . is inapplicable to civil § 1983 actions."). Plaintiff, moreover, failed to

address Defendants' argument that his search claim fails for lack of alleged injury in his opposition

brief. *See Tarrant v. City of Mount Vernon*, No. 20-CV-09004, 2021 WL 5647820, at *5 (S.D.N.Y.

Dec. 1, 2021) (Noting that a *pro se* "[p]laintiff chose consciously, by his silence [in opposition],

to waive and abandon any argument he could have made.").

Plaintiff's Fourth Amendment claim for unlawful search and seizure is, accordingly,

dismissed.

### III.      Third Claim for Relief: *Monell* Liability

Plaintiff's third claim for relief is brought under *Monell* against the Village. Under *Monell*

and its progeny, a municipality may be held liable where a plaintiff's constitutional rights are

violated because of a municipal policy or custom. *See Jimenez v. City of New York*, No. 18-CV-

07273, 2020 WL 1467371, at *3 (S.D.N.Y. Mar. 26, 2020) ("Plaintiff must plead allegations that

'the government body *itself* subjects a person to a deprivation of rights or causes a person to be

subjected to such deprivation.'" (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis

in original)). "[T]o prevail on a claim against a municipality under section 1983 based on acts of

a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2)

deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official

policy of the municipality caused the injury." *Triano v. Town of Harrison, New York*, 895 F. Supp.

2d 526, 531 (S.D.N.Y. 2012) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008)).

Such a claim "cannot lie in the absence of an underlying constitutional violation." *Galgano v. Cty.*

*of Putnam*, No. 16-CV-03572, 2020 WL 3618512, at *9 (S.D.N.Y. July 2, 2020) (quoting

*DeRaffele v. City of New Rochelle*, No. 15-CV-00282, 2017 WL 2560008, at \*6 (S.D.N.Y. June 13, 2017)).

Plaintiff's *Monell* claim fails because the Amended Complaint lacks facts supporting the existence of a municipal policy or practice. Plaintiff only alleges facts relating to his own claim. *See, e.g.*, *Smith v. Westchester Cty.*, No. 19-CV-01283, 2019 WL 5816120, at \*5 (S.D.N.Y. Nov. 7, 2019) (dismissing *Monell* claim where plaintiff "describe[d] only his own experiences"); *Oriental v. Vill. of Westbury*, No. 18-CV-03878, 2019 WL 4861413, at \*4 (E.D.N.Y. Oct. 2, 2019) (dismissing *Monell* claim where "the complaint contain[ed] only a detailed account of plaintiffs' own experiences").

Plaintiff's *Monell* claim also fails because he has not sufficiently alleged any underlying deprivation of his constitutional rights, as discussed *supra*. *See Galgano*, 2020 WL 3618512, at \*9.

Plaintiff's third claim for relief is, accordingly, dismissed.

IV.     Remaining Claims for Relief: State Law

Plaintiff's remaining three claims for relief are all brought under New York state law. However, because the Court has dismissed all of Plaintiff's federal claims, it declines to exercise jurisdiction over his state law claims. *See, e.g., McLeod v. Jewish Guild for the Blin*d, 864 F.3d 154, 158 n.6 (2d Cir. 2017) ("Of course, a district court may decline to exercise supplemental jurisdiction over state and local law claims if it has dismissed all claims over which it has original jurisdiction."). Moreover, "because the Court declines to exercise jurisdiction over Plaintiff's state law claims, the Court need not and does not reach Defendants' substantive arguments for dismissal of those claims." *Jones v. Westchester Cty.*, No. 20-CV-08542, 2022 WL 1406591, at \*6 n.7 (S.D.N.Y. May 4, 2022).

Plaintiff's fourth, fifth, and sixth claims are, therefore, dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiff's first three claims for relief, brought under federal law, are dismissed with prejudice.

Plaintiff's remaining three claims for relief, brought under state law, are dismissed without prejudice.

Plaintiff cannot cure the defects in his federal claims for relief through further amendment. While "[d]istrict courts should frequently provide leave to amend before dismissing a *pro se* complaint . . . leave to amend is not necessary when it would be futile." *Reed v. Friedman Mgmt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Moreover, "leave to amend may be denied if [as here] the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies." *Barnett v. Rockland Cnty. Jail Matnice*, No. 22-CV-02755, 2022 WL 1775716, at *2 (S.D.N.Y. June 1, 2022). Plaintiff has amended his Complaint twice already and had ample opportunity to amend any deficiencies. No further leave to amend is appropriate. *Id.*

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order of Dismissal would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of the Court is respectfully directed to: (i) terminate the motion sequence pending at Doc. 49; (ii) mail a copy of this Opinion and Order to Plaintiff; and (iii) close this case.

**SO ORDERED:**

Dated:   White Plains, New York
          January 19, 2023

_____
PHILIP M. HALPERN
United States District Judge