UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANTHONY AMIGON,

                              Plaintiff,

              -against-

DYLAN J. LUZON, et al.,

                              Defendants.

**OPINION AND ORDER**

21-CV-02029 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

Anthony Amigon ("Plaintiff"), proceeding *pro se*, brings this action against the Village of Dobbs Ferry (the "Village"), Officer Dylan Luzon ("Luzon"), and Officer Michael Digilio ("Digilio," with Luzon, the "Officer Defendants," and collectively, "Defendants"). (Doc. 75, "Third Am. Compl."). Plaintiff asserts one claim for relief under 42 U.S.C. § 1983 for unreasonable search; a claim of municipal liability against the Village under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) ("*Monell*"); and three state law claims for relief alleging trespass under New York Penal Law § 140.05, intentional infliction of emotional distress, and negligence. (*See generally* Third Am. Compl.).[1]

Defendants filed their motion for summary judgment pursuant to the briefing schedule set by the Court. (Doc. 96; Doc. 97, "56.1"; Doc. 98; Doc. 99, "Def. Br."; Doc. 100, "Collins Decl."; Doc. 101, "Digilio 2022 Decl."; Doc. 102, "Luzon 2022 Decl."; Doc. 103, "Digilio 2024 Decl.";

---

[1] By Opinion and Order dated January 19, 2023, the Court dismissed Plaintiff's Second Amended Complaint for failure to state a claim. (Doc. 61, the "MTD Order"). Plaintiff appealed the MTD Order to the Second Circuit Court of Appeals, and on May 10, 2024, the Second Circuit affirmed in part, vacated in part, and remanded for further proceedings consistent with its Order. (Doc. 66). The claims detailed herein are those that remain after the Second Circuit's Order and Mandate of USCA entered on June 5, 2024. (Doc. 71).

Doc. 104, "Luzon 2024 Decl."). Plaintiff opposed Defendants' motion (Doc. 105, "Pl. Br."), and the motion was fully briefed with the filing of Defendants' reply (Doc. 106, "Reply").

For the reasons set forth below, Defendants' motion for summary judgment is GRANTED.

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion for summary judgment and draws them from the pleadings, Defendants' Rule 56.1 Statement, Plaintiff's Memorandum of Law in Opposition,[2] the declarations submitted by Defendants together with the exhibits annexed thereto, and the admissible evidence proffered by the parties. Unless otherwise indicated, the facts cited herein are undisputed.

On the evening of March 7, 2020, Plaintiff was operating a vehicle within the Village of Dobbs Ferry (the "Village"), when Luzon, travelling behind Plaintiff in his patrol vehicle, observed Plaintiff traveling at speeds that exceeded the 25 miles per hour speed limit. (56.1 ¶¶ 1, 2, 7-10). Luzon initiated a traffic stop of Plaintiff's vehicle at or around 7:09 p.m. on the evening of March 7, 2020, and Plaintiff pulled over in compliance. (*Id.* ¶ 10-11). Luzon approached the driver's side window of the vehicle, asked Plaintiff for his license, and told Plaintiff that he had

---

[2] Plaintiff did not submit a Rule 56.1 statement or respond to Defendants' 56.1 Statement. While "pro se litigants are [] not excused from meeting the requirements of Local Rule 56.1 . . . where a pro se plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009); *see also Gadson v. Goord*, No. 96-CV-07544, 2000 WL 328879, at *3 (S.D.N.Y. Mar. 28, 2000) ("Plaintiff did not submit a Statement Pursuant to Civil Rule 56.1. Instead, he submitted 'Plaintiff's Opposition for Defendant's Memorandum of Law in Support of Motion for Summary Judgment,' stating his disagreement with the defendant's version of the facts. In light of plaintiff's pro se status, the Court will accept this memorandum in lieu of a Rule 56.1 Statement."). The Court considers Plaintiff's disagreement with statements in Defendants' 56.1 Statement to the extent that the disagreement is supported by evidence in the record. The Court is mindful that bald and conclusory statements do not constitute opposition to Defendant's 56.1 Statement. *See Woods v. Acampora*, No. 08-CV-04854, 2009 WL 1835881, at *3 (S.D.N.Y. June 24, 2009) ("[A] pro se party's 'bald assertion' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." (quoting *Odom v. Keane*, 1997 WL 576088, at *3 (S.D.N.Y. Sept. 17, 1997))).

travelled through a stop sign without fully stopping and that he had been speeding. (*Id.* ¶¶ 14-15, 17). Plaintiff contested this, telling Luzon that he was not speeding and did not fail to stop at a stop sign. (Third Am. Compl. at 3;[3] Collins Decl., Ex. A at Camera 1 ("Camera 1"), 19:10:50-19:11:17).[4] Plaintiff did not have his license on him but recited his driver's license number from memory. (56.1 ¶ 21). Luzon also asked Plaintiff if he owned the vehicle, to which Plaintiff responded that the vehicle was in his mother's name. (*Id.* ¶¶ 18-19). Luzon asked Plaintiff if he had any "weed" in the car, to which Plaintiff replied no, and that he did not smoke "weed." (Camera 1, 19:13:22-27). During Luzon's initial conversation with Plaintiff, he detected a slight odor of marijuana. (56.1 ¶ 16).

Luzon then walked back to his patrol vehicle, ran Plaintiff's driver's license number, and discovered that Plaintiff's license was suspended and that the vehicle was not registered in Plaintiff's name. (*Id.* ¶¶ 24-25). At or about that time, and before Luzon walked back to Plaintiff's vehicle, Digilio arrived on the scene and Luzon brought him up to speed on Plaintiff's suspended license. (Camera 1, 19:16:45-19:17:08). Luzon also informed Digilio that while speaking with Plaintiff he detected "kind of a slight odor of marijuana," though he couldn't "really tell," "wasn't going to go on that," and "wasn't sure," but that the license was nevertheless suspended based on two failures to appear and/or pay a fine. (*Id.* at 19:17:34-45; 56.1 ¶ 24).[5]

---

[3] Pagination cited herein corresponds to that generated by ECF.

[4] Defendants' Exhibit A annexed to the Collins Declaration consists of a dash cam video submitted to the Court via a USB drive, containing a forward-facing view, angled facing out from the dash of Luzon's patrol vehicle (Camera 1) and a rear view, angled facing towards the back seat of Luzon's patrol vehicle (Camera 2). References herein to the dash cam video and two angles are cited in conformity with the designation ascribed by the Defendants (*i.e.*, Ex. A at Camera 1). Similarly, timestamp citations to the dash cam video correspond to the internal timestamps located under "Media Time," specifically, "Current Time," *e.g.*, 19:09:15.

[5] Plaintiff alleges, in his Opposition Brief, that "[a]t the time of the incident, Defendant 'Luzon' did not vocally state that he smelled marijuana emanating from the vehicle to [Plaintiff] or to Defendant 'Digilio,'" citing to Defendants' "dash cam video," for this premise. (Pl. Br. at 10-11). The Court has carefully reviewed the dash cam video and determines that Plaintiff's opposition does not create a disputed issue of

Thereafter, Luzon returned to Plaintiff and directed him to exit his vehicle. (56.1 ¶ 27). Plaintiff initially refused and requested a supervisor, to which Luzon responded and motioned to Digilio, the more senior officer. (*Id.* ¶¶ 28-29; Camera 1, 19:18:06-24). Plaintiff then opened his driver's side door and exited the vehicle. (56.1 ¶ 29). Luzon patted him down for a weapon, handcuffed him, and Luzon and Digilio informed Plaintiff that his license was suspended and that he was being detained for his safety, as he had no legal authority to operate the vehicle. (*Id.* ¶¶ 30-31). Plaintiff was then directed into the back of Luzon's patrol vehicle. (*Id.*).

Luzon informed Plaintiff, while Plaintiff was sitting, handcuffed in the back of the patrol vehicle, that he was going to search Plaintiff's vehicle, to which Plaintiff responded, "Ok, no problem." (*Id.* ¶ 32; Collins Decl., Ex. A at Camera 2 ("Camera 2"), 19:19:45-48).[6] Before commencing the search of the vehicle, Luzon then asked Plaintiff if he was going to find anything in the car, and Plaintiff responded that in fact he does smoke "weed" and that there was a "little bit" in the vehicle, without specifying where it was located. (56.1 ¶¶ 34-35). Luzon then searched Plaintiff's car and recovered marijuana from the interior of the vehicle. (*Id.* ¶ 36). As Luzon was attempting to open the trunk of Plaintiff's vehicle to continue his search, Plaintiff unprompted and voluntarily explained to Digilio how Luzon could properly open the trunk of Plaintiff's vehicle. (*Id.* ¶ 33). Luzon then searched the trunk of Plaintiff's vehicle, and nothing else was discovered. (*Id.* ¶¶ 38-39).

---

material fact, as Luzon did in fact vocally mention the marijuana odor to Digilio, and had previously asked Plaintiff if he had any weed in his car, to which Plaintiff responded in the negative. (*See supra*, at 3).

[6] Plaintiff, in his Opposition Brief, concedes that he "did tell the Defendants 'Ok, No Problem' in response to [Luzon's] statement that he was going to search [Plaintiff's] vehicle." (Pl. Br. at 13). However, Plaintiff claims that "the officer lied about having a warrant to search," without providing any citation for this statement. (*Id.*). Upon careful review of the dash cam video, there is no indication that Luzon or Digilio ever stated they had a "warrant to search" the vehicle. (*See generally* Camera 1/Camera 2). Accordingly, this conclusory assertion without support does not serve to create a disputed issue of material fact. *See Woods*, 2009 WL 1835881, at *3.

Digilio informed Plaintiff that he could be charged for the possession of marijuana discovered, but as Luzon was the initial officer on the scene, it would be in his discretion whether to do so. (*Id.* ¶ 34). The Officer Defendants allowed Plaintiff to call his parents to come pick him and the vehicle up to avoid it being impounded, and Digilio removed Plaintiff's handcuffs for the duration of Plaintiff's phone call. (*Id.* ¶ 43; Camera 2, 19:22:29-19:24:10). Plaintiff asked Digilio whether he would be able to go home after the stop, and Digilio assured him that he would not be going to the precinct, and that as soon as the tickets were issued and Plaintiff's parents arrived to remove Plaintiff's vehicle, he would be able to leave with them. (*Id.* 19:24:39-52). Plaintiff was issued two tickets at the scene: failure to stop at a stop sign and aggravated unlicensed operation, both in violation of the New York Vehicle and Traffic Law. (56.1 ¶ 40). In an exercise of discretion, the Officer Defendants did not charge Plaintiff with speeding or possession of the marijuana. (*Id.* ¶ 42). Plaintiff ultimately entered a guilty plea in satisfaction of the two charges incident to the traffic stop: Unlicensed Driver and Stop Sign Violation. (*Id.* ¶¶ 48-49).

Plaintiff takes the position that the above actions by the Officer Defendants resulted in a violation of his constitutional rights, specifically, that the search of his vehicle was an unlawful search, conducted without a warrant and with no applicable exception. Defendants take the position that Plaintiff had no expectation of privacy in the vehicle because his suspended license rendered his operation of the vehicle unlawful, and in any event, the Officer Defendants' search was proper and lawful under either the automobile exception to a warrantless search or on consent.

This litigation followed.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-03875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[7] "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). "The question at summary judgment is whether a genuine dispute as to a *material* fact exists—not whether the parties have a dispute as to any fact." *Hernandez v. Comm'r of Baseball*, No. 22-343, 2023 WL 5217876, at *5 (2d Cir. Aug. 15, 2023); *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022)).

The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *McKinney*, 49 F.4th at 738 (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cnty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable

---

[7] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at *4 (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her[] claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

The Court is, of course, mindful that "[*p*]*ro se* litigants are afforded a special solicitude," which includes reading their filings "to raise the strongest arguments they suggest." *Mortimer v. City of New York*, No. 15-CV-07186, 2018 WL 1605982, at *9 (S.D.N.Y. Mar. 29, 2018) (internal quotation marks omitted). "It is through this lens of leniency towards *pro se* litigants that this Court must consider a defendant's motion for summary judgment against a *pro se* plaintiff." *Adams v.*

*George*, No. 18-CV-02630, 2020 WL 5504472, at *5 (S.D.N.Y. Sept. 8, 2020). This status does not, however, excuse a *pro se* litigant from making the showing required to defeat summary judgment; he or she must offer more than "bald assertions, completely unsupported by evidence" to overcome the motion. *Wisdom v. Loiodice*, No. 17-CV-04837, 2020 WL 4431590, at *4 (S.D.N.Y. July 31, 2020); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (explaining that the mere fact that a litigant is *pro se* "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment" (internal quotation marks omitted)); *Ross v. Koenigsmann*, No. 14-CV-01321, 2017 WL 9511096, at *1 (N.D.N.Y. Aug. 16, 2017), *adopted sub nom Ross v. Mannava*, 2017 WL 4338883 (N.D.N.Y. Sept. 29, 2017).

## ANALYSIS

### I.  Plaintiff's Federal Claims

Plaintiff brings his first and fifth claims for relief under § 1983, which provides in pertinent part that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "This language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). Thus, to state a claim under § 1983, Plaintiff must demonstrate "(1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under color of state law, or a state actor." *Id.*; *see also Town & Country Adult Living, Inc. v. Vill./Town of Mount Kisco*, No. 17-CV-08586, 2019 WL 1368560, at *17 (S.D.N.Y. Mar. 26, 2019). The "first step in any [§ 1983] claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266,

271 (1994). Defendants seek to dismiss both of Plaintiff's § 1983 claims for relief and the Court will consider them seriatim.

### a.  First Claim for Relief: Unreasonable Search of Plaintiff's Vehicle

Plaintiff first argues that the Officer Defendants "unlawfully enter[ed] and search[ed] [his] vehicle." (Third Am. Compl. at 4).[8] The Fourth Amendment provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. This language, "incorporated against the states by the Fourteenth Amendment, guarantees all individuals the right to be free from unreasonable search and seizure." *Corley v. Vance*, 365 F. Supp. 3d 407, 443 (S.D.N.Y. 2019), *aff'd sub nom. Corley v. Wittner*, 811 F. App'x 62 (2d Cir. 2020). Warrantless searches are thus "*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *United States v. Weaver*, 9 F.4th 129, 138 (2d Cir. 2021) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). "A 'search' occurs for purposes of the Fourth Amendment if the police seek information by intruding on a person's reasonable expectation of privacy or by means of trespassing upon one's person, house, papers, or effects." *United States v. Smith*, 967 F.3d 198, 205 (2d Cir. 2020).

The Second Circuit, on an earlier appeal herein, was presented with different arguments and postures concerning the alleged unreasonable search than those now presented at the summary judgment stage. At the pleadings stage, the Second Circuit held, there was no probable cause to believe that the vehicle "contained evidence of criminal activity." (Doc. 66 at 4).

---

[8] It is unnecessary for the Court to consider Defendants' argument that Plaintiff cannot base an unreasonable search claim on his initial traffic stop, as Plaintiff is clear that he presses that claim in connection with the search of the vehicle, not the initial stop. (Third Am. Compl. at 4; *see generally* Pl. Br.).

Now, at summary judgment, with the benefit of discovery, Defendants press the following arguments: (i) the Officer Defendants had probable cause under the automobile exception to search the vehicle; and (ii) in any event, Plaintiff consented to Luzon's search of the vehicle's trunk. The Court considers each argument as follows.

### i.    Automobile Exception

As detailed above, warrantless searches and seizures are "*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Weaver*, 9 F.4th at 138 (internal quotation marks omitted). One such exception is the automobile exception. Under the automobile exception, law enforcement "may conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime." *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004); *see also California v. Acevedo*, 500 U.S. 565, 580 (1991) ("The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained."). Probable cause in this context is "a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules," and such a determination is a "flexible, all things-considered approach . . . requir[ing] looking at 'the totality of the circumstances.'" *United States v. White*, 298 F. Supp. 3d 451, 460 (E.D.N.Y. 2018) (further noting that probable cause "can be [just as] established by a suspicious sound as it can be by a suspicious smell or appearance" (citing *United States v. Jackson*, 652 F.2d 244, 251 n.6 (2d Cir. 1981))).[9]

---

[9] The odor of marijuana can sufficiently provide probable cause to search a vehicle for contraband in the context of the automobile exception, specifically in cases prior to the effective date of New York's legalization of personal-use marijuana. *United States v. Brown*, No. 19-CR-00186, 2021 WL 3194794, at *8 (W.D.N.Y. Apr. 14, 2021). This law became effective on March 31, 2021, *see* N.Y. Penal L. § 222.05(1), and as the law does not apply retroactively, such legislation has no effect on the validity of the search here, conducted on March 7, 2020. *See id.*; *see also United States v. Burt*, No. 23-6060 (L), 23-6037, 2024 WL 3244380, at *2 n.1 (2d Cir. 2024) (holding that the Court "need not decide how that legislation would

When probable cause exists, a search may be made of "every part of the vehicle and its contents, including all containers and packages in the vehicle." *United States v. Burt*, No. 23-6060 (L), 23-6037, 2024 WL 3244380, at *3 (2d Cir. 2024).

Here, employing a fluid, "all things-considered" approach, and considering the totality of the circumstances, there is ample undisputed evidence to show that the Officer Defendants had probable cause to search the vehicle. When Luzon approached the vehicle initially, he asked Plaintiff whether he had "weed" in the car, to which Plaintiff stated that he did not, and that he does not smoke "weed," even though Luzon smelled a "slight odor" of marijuana, but "wasn't sure." (Camera 1, 19:17:34-45, 19:13:22-27; 56.1 ¶ 24).[10] Once Luzon directed Plaintiff to exit the vehicle upon learning his license was suspended, Plaintiff initially refused, and then upon being detained, and prior to any search, notified Luzon and Digilio that he in fact did smoke "weed" and that there was a "little bit" within his vehicle, without specifying the exact location. (56.1 ¶¶ 28-29, 34-35). Considered together, the facts that Luzon thought he smelled a "slight odor" of marijuana, and Plaintiff's lying about and then subsequently admitting that there was marijuana in the vehicle, sufficiently establish probable cause to believe that the car contained contraband or evidence of a crime. *See White*, 298 F. Supp. 3d at 460-461; *United States v. Craft*, No. 23-CR-00178, 2023 WL 6215326, at *5-6 (S.D.N.Y. Sept. 25, 2023) (holding that where the defendant

---

have affected the validity of the search," as the legalization "was not yet in effect at the time of the events in question").

[10] The Court finds Plaintiff's arguments concerning the Defendants' alleged "sham affidavits" entirely unpersuasive, as they are plainly not a "sham"—first, the dash cam video supports Luzon's declaration concerning the odor of marijuana (*see supra*, at 3-4), and second, the Officer Defendants were never deposed, and as rightfully noted by Defendants, Defendants' counsel's questions during a deposition are not in any way evidence sufficient to constitute a judicial admission. (*See* Def. Br. at 4); *see also Mittleman v. County of Rockland*, No. 07-CV-06382, 2013 WL 1248623, at *17 n.3 (S.D.N.Y. Mar. 26, 2013). Plaintiff's arguments concerning judicial estoppel fail for similar reasons, and as there is no "prior proceeding" for estoppel to apply. *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 98 (2d Cir. 1997).

"informed the NYSP troopers as he was being arrested that the shotgun was located inside his van," this was a sufficient basis for probable cause under the automobile exception).

Accordingly, Luzon's search of the vehicle was permissible under the automobile exception.

### ii.  Consent

In any event, Defendants argue that Plaintiff voluntarily consented to Luzon's search, focusing on Plaintiff's unprompted explanation to Digilio of how Luzon could properly open the trunk of his vehicle. (Def. Br. at 10). Consent, a second exception to the warrant requirement, is applicable where "it has not been coerced, by explicit or implicit means, by implied threat or covert force and is not granted only in submission to a claim of lawful authority." *United States v. Garcia*, No. 19-CR-00410, 2021 WL 3516447, at *5 (E.D.N.Y. Aug. 10, 2021) (internal quotation marks omitted). While Plaintiff does not dispute that he stated "Ok, no problem" in response to Luzon's statement that he needed to search the vehicle (Pl. Br. at 13), Plaintiff argues that the circumstances of the statement rendered it involuntary (*id.* at 12-13 (contesting the voluntariness of his consent due to the "late-night circumstances [of the traffic stop] . . . coupled with the specific, accusatory nature of the questioning," and the fact that Plaintiff was detained in handcuffs in Luzon's patrol vehicle, without being advised of his *Miranda* rights, when he made the statement)). Plaintiff does not respond to Defendants' arguments concerning his explanation to Digilio of the proper way for Luzon to open the trunk of Plaintiff's vehicle. (*See id.* at 12-14).

Evaluating whether consent to conduct a search was voluntary asks the Court to determine "ultimate[ly] . . . whether the officer had a reasonable basis for believing that there had been consent to the search." *United States v. O'Brien*, 926 F.3d 57, 77 (2d Cir. 2019) (quoting *United States v. Garcia*, 56 F.3d 418, 423 (2d Cir. 1995)). "Voluntariness is a question of fact to be

determined from the totality of all the circumstances, both the characteristics of the accused and the details of the interrogation." *United States v. Ofsink*, No. 19-CR-00290, 2021 WL 457230, at *10 (E.D.N.Y. Feb. 8, 2021) (internal quotation marks and citations omitted); *see also United States v. Iverson*, 897 F.3d 450, 458 (2d Cir. 2018) ("Consent may be express or implied."); *United States v. Buettner-Janusch*, 646 F.2d 759, 764 (2d Cir. 1981) (explaining that "consent may be inferred from an individual's words, gestures, or conduct"). While no single factor is decisive, the Court considers:

> "age, education, intelligence, length of detention, use of physical punishments or deprivations, and whether the alleged consenting person was advised of his constitutional rights," and where the person whose consent was allegedly given was in custody, whether "guns were drawn or the consenting individual was frisked . . . [or] threatened, was in a public area, or was informed that he had the option of refusing consent to the search."

*United States v. Collins*, No. 19-CR-00395, 2020 WL 5439658, at *3 (S.D.N.Y. Sept. 9, 2020) (quoting *United States v. Puglisi*, 790 F.2d 240, 243-44 (2d Cir. 1986) (alterations in original)). Where, as here, law enforcement relies on consent, it bears the burden of establishing consent by a preponderance of the evidence. *United States v. Cacace*, 796 F.3d 176, 189 (2d Cir. 2015); *United States v. Snype*, 441 F.3d 119, 131 (2d Cir. 2006). Further, "there is no requirement that an arrestee who allegedly gives consent be informed of his right to refuse such consent to search," or that the allegedly consenting individual be read *Miranda* rights, and "consent may be inferred from an individual's words, gestures, or conduct." *Collins*, 2020 WL 5439658, at *4-6.

Here, after considering the totality of the circumstances, Plaintiff's unprompted and spontaneous explanation to Digilio of the proper way for Luzon to open the trunk of his vehicle, (*see* 56.1 ¶ 33), constitutes voluntary consent of the search of the trunk.[11] *United States v.*

---

[11] While the voluntariness of Plaintiff's statement, "Ok, no problem" may pose a closer question when considering the *Collins* factors, the Court need not, and does not, reach this issue in light of the Court's

*Hamilton*, No. 20-CR-00545, 2022 WL 1157382, at *7 (S.D.N.Y. Apr. 19, 2022); *United States v. Fernandez-Jimenez*, No. 03-CR-01493, 2004 WL 1598653, at *4-5 (S.D.N.Y. July 16, 2004) (unprompted assistance in opening the trunk a factor in support of voluntary consent to the search of the vehicle). While at the time of the statement, Plaintiff was handcuffed and detained in Luzon's patrol vehicle, and had not been read his *Miranda* rights, neither Luzon nor Digilio spoke to Plaintiff in a threatening manner, their weapons were holstered at all times, and Digilio even uncuffed Plaintiff for a short period of time to allow Plaintiff to use his phone to call his parents (56.1 ¶ 43; Camera 2, 19:22:29-19:24:10, 19:24:39-52), demonstrating an apparent lack of coercion or duress. *United States v. Walker*, 922 F. Supp. 724, 727-28 (N.D.N.Y. 1996). Accordingly, considering these factors, including the spontaneous nature of Plaintiff's assistance, the Court holds that Plaintiff voluntarily consented to a search of the trunk of his vehicle.

Plaintiff's Fourth Amendment claim for unlawful search and seizure is accordingly dismissed.[12]

### b. Fifth Claim for Relief: *Monell* Liability

Plaintiff's fifth claim for relief is brought under *Monell* against the Village. Under *Monell* and its progeny, a municipality may be held liable where a plaintiff's constitutional rights are violated because of a municipal policy or custom. *See Jimenez v. City of New York*, No. 18-CV-07273, 2020 WL 1467371, at *3 (S.D.N.Y. Mar. 26, 2020) ("Plaintiff must plead allegations that 'the government body *itself* subjects a person to a deprivation of rights or causes a person to be

---

finding of probable cause through the automobile exception (*see supra*), and as Defendants are not explicitly moving on consent of the search based on this statement (*see* Def. Br. at 10; Reply at 6).

[12] The Defendants also seek summary judgment dismissing the Third Amended Complaint on the basis that Plaintiff lacks standing to contest the search of the vehicle, due to Plaintiff's suspended license and alleged lack of reasonable expectation of privacy in the vehicle (Def. Br. at 7-8), and that the Officer Defendants are entitled to qualified immunity (*id.* at 15-16). Given the conclusions reached herein, the Court need not and does not reach these arguments.

subjected to such deprivation.'") (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original)). "[T]o prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the injury." *Triano v. Town of Harrison, New York*, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008)). Such a claim "cannot lie in the absence of an underlying constitutional violation." *Galgano v. Cnty. of Putnam*, No. 16-CV-03572, 2020 WL 3618512, at *9 (S.D.N.Y. July 2, 2020) (quoting *DeRaffele v. City of New Rochelle*, No. 15-CV-00282, 2017 WL 2560008, at *6 (S.D.N.Y. June 13, 2017)).

Because Plaintiff fails to plausibly allege a violation of a constitutional right, any *Monell* claim must be dismissed. *See Schultz v. Inc. Vill. of Bellport*, 479 F. App'x 358, 360 (2d Cir. 2012) ("Because [the plaintiff] was unable to establish an underlying violation of his constitutional rights . . . his . . . *Monell* claim necessarily fail[s] as well."); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.").

Plaintiff's § 1983 claim for *Monell* liability is therefore dismissed.[13]

---

[13] Given the conclusions reached herein, the Court need not and does not reach Defendants' arguments concerning punitive damages. In any event, to the extent Plaintiff's Third Amended Complaint can be read to press a claim for punitive damages on Plaintiff's § 1983 claims, this claim is also dismissed, against both the Village and the Officer Defendants. Punitive damages are not available for *Monell* claims asserted against the Village—a municipality. (Def. Br. at 16); *see also De Michele v. City of New York*, No. 09-CV-09334, 2012 WL 4354763, at *22 (S.D.N.Y. Sept. 24, 2012); *Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 309 (S.D.N.Y. 2001) ("Punitive damages are not available from a municipality."). Second, as to the Officer Defendants, punitive damages are only available in § 1983 cases where "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Sulkowska*, 129 F. Supp. 2d at 309 (citing *Smith v. Wade*, 461 U.S. 30,

II.    Plaintiff's State Law Claims

Plaintiff's remaining claims for relief are all brought under New York state law. However, Defendants argue these claims must be dismissed because Plaintiff failed to follow notice of claim requirements under the New York General Municipal Law. (Def. Br. at 13). The Court agrees. Specifically, this provision requires service of a notice of claim within 90 days after a claim arises "[i]n any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation . . . or any officer, appointee or employee thereof." N.Y. Gen. Mun. Law § 50–e(1). Further, it is Plaintiff's burden to affirmatively plead compliance with such notice of claim requirements. *Stein v. Town of Greenburgh*, No. 21-CV-05673, 2023 WL 2432574, at *8 (S.D.N.Y. Mar. 8, 2023). This is a "condition precedent to bringing" the categories of claims identified and "[f]ederal courts do not have jurisdiction to hear complaints from plaintiffs who have failed to comply with the notice of claim requirement, or to grant permission to file a late notice." *Villa v. Westchester Cty.*, No. 19-CV-428, 2020 WL 4505968, at *8 (S.D.N.Y. Aug. 5, 2020) (internal quotation marks omitted). Indeed, in order to survive even a motion to dismiss, courts require that plaintiffs plead affirmatively that they complied with notice of claim requirements. *Id.*

Here, Defendant argues that Plaintiff did not file a notice of claim (Def. Br. at 13), and Plaintiff, in his opposition, did not respond to this argument. (*See generally* Pl. Br.). As Plaintiff has not pled that he complied with the notice of claim requirement and he did not oppose Defendants' argument, effectively conceding it, the Court deems the claims abandoned. *See CVS Pharm., Inc. v. Press Am., Inc.*, 377 F. Supp. 3d 359, 383 (S.D.N.Y. 2019); *Cornetta v. Town of*

---

56 (1983)). There is no indication in the record that the Officer Defendants exhibited anything close to "evil motive or intent," or "reckless or callous indifference" to Plaintiff's federally protected rights. Accordingly, any punitive damages claim is dismissed. *See Woods*, 2009 WL 1835881, at *3.

*Highlands*, No. 18-CV-12070, 2021 WL 4311170, at *3 (S.D.N.Y. Sept. 21, 2021). Accordingly, Plaintiff's claims under state law are dismissed with prejudice for failure to file a timely notice of claim. *See Hamilton v. City of New York*, No. 24-cv-02550, 2025 WL 415836, at *3 (S.D.N.Y. Feb. 6, 2025).

Plaintiff's second, third, and fourth claims, as well as any punitive damages claims stemming therefrom, are therefore dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc. 96) is GRANTED. Plaintiff's first and fifth claims for relief, brought under federal law, are dismissed with prejudice. Likewise, Plaintiff's remaining state law claims are dismissed with prejudice.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion and Order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of the Court is respectfully directed to: (i) terminate the motion sequence pending at Doc. 96; (ii) mail a copy of this Opinion and Order to Plaintiff; and (iii) close this case.

SO ORDERED.

Dated: White Plains, New York
        July 16, 2025

_____
Philip M. Halpern
United States District Judge